Judge Coalteb,
delivered his opinion;
This is an action quare clausum fregit, in which there was a verdict and judgment against the plaintiff, who appealed to this Court; during the pendency of which appeal, the appellee has departed this life. A scire facias having issued to bring both his real and personal representatives before the Court, the first question presenting itself is, whether the appeal can be revived at all; and if it can, whether the real and personal representatives are both to be made parties thereto, or only the latter?
Whilst it must be admitted on all hands, that this is a personal action, and of that nature which dies with the person, .so that if the judgment be reversed, no farther proceeding can be had in the Court below, but the cause must stand abated, as in the case of Hook v. Hancock, 5 Munf. 546, in this Court: yet the appellant may be interested in having this judgment reversed, if it be erroneous, as it may possibly stand in his way in some other controversy, in relation to the land in dispute. Although it would therefore seem, that the real representative of the appellee may be most interested in procuring an affirmance of the judgment; yet as the action is, in its nature personal, as aforesaid; as the appellant will be entitled, in case of reversal, to recover his costs in this Court, to be levied of the goods of the appellee; it would seem that the personal representative must be a party; and it is not perceived how both can be joined, the one in his representative, and the other in his individual character; or how a joint judgment could be entered for or against them; or indeed, how any judg *19 ment could be entered for or against the real representative in this case.
The scire facias, therefore, as to the real representative, was improvident]y awarded, and must be quashed.
On the merits, I am of opinion, that the first instruction mentioned in the bill of exceptions, was right.
As to the second instruction, I have found more difficulty. In fact, I find some difficulty in ascertaining its import; or rather, the data on which I am to consider it as predicated. In the first part of the bill of exceptions, it is stated, that the evidence was introduced by the plaintiffs, tending to shew that Nathaniel Wilkinson and Nathaniel Bacon, being desirous to run the true line between them, did proceed, in 1759, to do so: that they began at A. one known corner, and intended to run a straight lino to the bottom of the neck, the point C. in the plat, another known point between them: that their guides left them; but nevertheless they proceeded on, and ran the crooked line to 13. Evidence was also introduced to prove, (what the defendants denied) that the said Wilkinson and Bacon, after they reached the point B. well knowing that the course, so pursued by them, was not the true course, nevertheless agreed to mark the trees on that course, and to establish it as the line between them; and accordingly that the line was so marked, in the presence, and by the consent of both of them. Evidence was also introduced, for the purpose of proving that a part of the said line, from A. to 0. was afterwards t wice processioned in the life-time of Nathaniel Bacon, (he knowing it, and making no objection;) and that the processioners were probably prevented from going farther, by the mud and water in the swamp. Wilkinson died, as is admitted, in 1809; and the case goes on to shew, how that part of the coterminous tract, joining this disputed land, came to the plaintiff; concerning which, there is no dispute: that N Bacon died in 1774, and devised his land to Izard Bacon his son, who died in 1816, and devised to the defendant.
*20 The defendant introduced evidence for the purpose of shewing (what the plaintiff denied,) that Izard Bacon, immediately after the death of his father, claimed the land now ^11 dispute, as his own, denying that the line so as aforesaid marked by Nathaniel Wilkinson and N. Bacon, was the true dividing line between them: that Izard Bacon, for more than 20 years before this suit, repeatedly felled trees and procured timber from the sa}d land; and on one occasion, gave Wilkinson notice, that he was do-" ing so; and that Wilkinson, about 20 years ago, directed his own overseer not to make a tobacco plant patch on the said land, saying it was disputed land.
The counsel for the defendant, moved the Court to instruct the jury, that even if they were of opinion, that the facts which the plaintiff endeavoured to prove, actually occurred, to wit; that & parol agreement was made between N. Wilkinson and N. Bacon, to establish a line between them, which they both knew to be, and which was, in truth, different from the true line, and the actual running and marking of that line, by virtue of the said agreement; yet such agreement and running the line, did not pass the title from Bacon to Wilkinson; which instruction was given.
The plaintiff’s counsel then moved the Court to instruct them, that running and marking the said dividing line between the said parties, and the two processionings of a part of the line as aforesaid, together with the acquiescence of N. Bacon in the said line during his life (if the jury should be satisfied of such facts,) constituted such a possession in Wilkinson, and those under him, as after a lapse of 20 years, (if the jury should think such time did elapse,) would enable him or those under him, to maintain an action of trespass against Izard Bacon, or those claiming under him; which instruction was refused. But the Court instructed the jury, that the mere fact of running and marking the line, and the two processionings of part of the said line, and the subsequent acquiescence of the *21 said N. Bacon, in the said line and processionings, did not constitute such an adverse possession, as would enable N Wilkinson or those claiming under him, to maintain trespass against Izard Bacon, or the defendant, oven if 20 years should have elapsed from the running of such line; unless the said fact, of running and marking the said line, was accompanied or followed by some act of actual possession on the part of the said Wilkinson, such as felling trees; and if such act of actual possession was not proved, the possession of the land must be considered as going with the title.
When I read this instruction, I was struck with the manner in which the Judge limited the case to the mere facts of running and marking the line, and the two processionings of part of the line, with the subsequent acquiescence of N. Bacon, in the said line and processionings, as not constituting such a possession as would maintain the action; unless such running and marking was accompanied or followed by some act of actual possession, &c. 1 thought the Judge had improperly thrown out of the plaintiff’s case, the parol agreement to establish that as the line between them, which the first part of the hill of exceptions states that he attempted to prove. I think a case depending on the mere fact of two neighbours running a line and marking it as a line between them, whether they did or did not know that it was the true line, and making no objection when a part of that line, (which, by the by, in that part thereof, was very near the true line,) was processioned, and acquiescing therein, (so far as a party can be said to acquiesce, where the party now claiming possession under these acts, never exercised any of the ordinary acts of ownership of the disputed land,) is very difibrent from the case of parties running a dividing line; and though they found it not to be the true line, yet agreeing to establish it as a line between them. The latter transaction may very possibly be considered, and 1 incline to think, ought to be considered, equivalent to an actual surrender of the pos *22 session, by the true owner to the other, to hold as .his property; and although it would not convey the title, yet it would be such a possession, as, after the lapse of 20 years, would enable him to maintain trespass even against him, who had the right of property. But I should doubt very much, whether the mere running and marking a line, &c. in the manner mentioned by the Judge, unless accompanied or followed up by some more unequivocal act of possession, ought to be considered, between co-terminous tenants, as such an adverse possession, as would not, according to the decisions, accompany the title. I think it would be a dangerous doctrine, and might trench injuriously on that safe rule of law, which protects such tenants, and which it can never be sound policy to abridge or lessen. But did the Judge place the case of the plaintiff on too narrow a ground ? It seems to me that he could not, and ought not, to have placed it on any other, unless the plaintiff had new modelled his motion. It may be that the plaintiff doubted his ability to prove the parol agreement, and chose to rest his case on the running, marking, &c.; and agreeably to his motion, had the Judge given the instruction required, he need not have proved the parol agreement, in order to support his case.
Under this view of the motion and instruction that was given, and as at present advised, I think the instruction was correct.
If I am wrong in this, and if the plaintiff’s motion and the instruction of the Court were predicated on every thing, which the preceding part of the bill of exceptions states that the plaintiff attempted to prove; then, as before stated, I incline to think that the instruction was wrong.
But had the Judge given the instruction asked for, he ought to have gone further.
The running and marking the line, if it ever took place, is said to have been in 1759. It is agreed, that Nathaniel Bacon died in 1774,—15 years thereafter. If the proofs, then, which the defendant offered, should have satisfied the *23 ¡ary that Izard Bacon, the son and devisee of Nathaniel, immediately after his death, laid claim to the land in eontroversy, and followed that claim up by acts of ownership, and especially if he gave Wilkinson notice thereof, even if those acts and that notice were after 20 years from the running of the line; and especially, too, if Wilkinson directed his overseer not to make use of the land for a plant patch or otherwise, because it was disputed land; then they ought to have been instructed that this would bo such an entry and possession by Izard Bacon, as that after 5 years, no action of trespass would lie against him, unless Wilkinson, or those claiming under him, had re-entered within 20 years; and if the jury should be satisfied, that such entry and possession by Izard Bacon, was immediately after the death of his father, and within 20 years from the running of the line, they ought to have been instructed that such entry was lawful, and that no action would lie therefor.
According to one view of the case, I should affirm, and according to the other, reverse, the judgment; and must, therefore, leave it to my brethren, whether it should be affirmed or reversed.