**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Donald LANGLEY,
Defendant–Appellant.**

No. 90–5523.

United States Court of Appeals,
Fifth Circuit.

Dec. 7, 1990.

Harry S. Bates, San Antonio, Tex. (Court-appointed), for defendant-appellant.

Mark Barrett, LeRoy Morgan Jahn, Asst. U.S. Attys., Pamela A. Mathy, U.S. Atty., Philip Police, Asst. U.S. Atty., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before WISDOM, GARWOOD, and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Donald Langley (Langley) was convicted, on his plea of guilty, of violating 18 U.S.C. § 1952, known as the Travel Act, which proscribes causing to be used or using a facility in interstate commerce with intent to, *inter alia*, promote, manage, establish, carry on, or facilitate the promotion, management, establishment or carrying on of, an "unlawful activity." Langley appeals, challenging only his sentence, which was twenty-one months' imprisonment and a $1,500 fine. Langley was sentenced pursuant to section 2E1.2 of the sentencing guidelines. This section provides for an offense level of six or the offense level of the underlying unlawful activity, whichever is higher. Application note two of the commentary to section 2E1.2 provides that where the "underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used." The district court determined that 18 U.S.C. § 2421, a codification of a portion of the Mann Act or White Slave Traffic Act, was the most analogous federal offense and applied the sentencing guideline applicable to section 2421, former U.S.S.G. § 2G1.1, which produced a base offense level of fourteen.[1] On appeal, Langley challenges the district court's determination of the most analogous federal offense, claiming that there is

---

1. Sentencing Guideline 2G1.1 was amended effective November 1, 1990. The sentencing court applied the version of section 2G1.1 that was in effect on the date of sentencing—January 24, 1990—pursuant to 18 U.S.C. 3553(a)(4). The November amendment made only minor changes which are irrelevant to the present issue.

no federal offense analogous at all to the relevant state offense, or, in the alternative, that 18 U.S.C. § 1384 is a more analogous federal offense than is section 2421. Under either claim, Langley argues that the proper base offense level would be a six. We hold that the district court properly selected section 2421 of the Mann Act as the most analogous federal offense and accordingly affirm.

### Facts and Proceedings Below

Langley owned and operated "Kelly's," an escort service business in San Antonio, Texas. Langley established this business in order to facilitate the management, promotion and performance of prostitution services.

In late November 1987, Langley began operations by opening a bank account at Broadway National Bank in San Antonio, Texas. Langley used this account to deposit the proceeds received from Kelly's prostitution activities. In December 1987, Langley filed an Assumed Name Certificate with the Bexar County Clerk's Office. Later that month, Langley rented a residence. This residence and the telephone at the residence were used intermittently in the course of Kelly's business.

Kelly's clients paid in cash or with checks or credit cards. The typical credit card charge was about $150. Kelly's received approximately $1,200 per month by this means of payment, representing roughly ten to twenty percent of its total prostitution income. Langley kept slightly less than half of each charge, with the prostitute providing the service receiving the remainder.

Langley laundered the credit card purchases through a merchant account entitled "Business Automation," a company based in California. Langley would transfer the charge slips to Business Automation, which would then seek payment from the credit card company. When the charge was paid, Business Automation would write a check payable to Langley for a percentage of the amount collected. Langley deposited the checks in Kelly's Broadway National Bank account. The processing of the credit card charges and the client's payment of these charges were accomplished through interstate commerce.

The Federal Bureau of Investigation (FBI) subpoenaed Business Automation's account records and determined that the credit card charge amounts approximated amounts currently being charged by escort services for one-hour calls. The account record also revealed the names of the credit card holders, whom the FBI identified as having patronized other escort services that accepted credit card payments.

In March 1988, undercover officers arranged to have Kelly's send employees to the officers' hotel rooms, where the employees offered to engage in sexual conduct for pay. In November 1988, a Kelly's newspaper advertisement listed a new telephone number belonging to a Kelly's employee operating out of an apartment in San Antonio, Texas. It was determined that Kelly's had expanded operations to that apartment and to an adjacent apartment.

An FBI search of the two apartments, pursuant to a federal search warrant, led to the discovery of various business records associated with Kelly's. Business information contained in the records indicated that Kelly's employed more than twenty prostitutes. The records further reflect Langley's role as owner and operator of Kelly's and his managerial function in the operation of the business.

Langley does not challenge the validity of his guilty plea to count six of a ten-count indictment[2] charging him with using and causing to be used a facility in interstate commerce with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of, an unlawful activity in violation of 18 U.S.C. § 1952.

---

**2.** Count one alleged violation of 18 U.S.C. § 371, conspiracy to commit an offense against the United States (*i.e.*, 18 U.S.C. § 1952). The remaining counts were identical to count six except for the identity of the issuer of the credit card, the credit card number, and the date of the alleged violation.

Section 1952 imposes criminal liability upon

"(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

"(1) distribute the proceeds of any unlawful activity; or

"(2) commit any crime of violence to further any unlawful activity; or

"(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

. . . .

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving ... prostitution offenses in violation of the laws of the State in which they are committed...." 18 U.S.C. § 1952.

The "unlawful activity" in reference to which Langley used a facility in interstate commerce involved promotion of prostitution and aggravated promotion of prostitution, in violation of sections 43.03 and 43.04 of the Texas Penal Code.[3]

The sentencing guideline for section 1952 is U.S.S.G. § 2E1.2, which states as follows:

"(a) Base Offense Level (Apply the greater):

"(1) 6; or

"(2) the offense level applicable to the underlying crime of violence or other unlawful activity in respect to which the travel or transportation was undertaken."

Application note two in the commentary for section 2E1.2 provides that "[i]f the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used." [4]

The district court determined that the most analogous federal offense to the underlying unlawful activity was 18 U.S.C. § 2421, which imposes criminal liability for interstate transportation of persons to engage in prostitution. This statute comprises one section of the Mann Act, otherwise known as the White Slave Traffic Act.

---

**3.** These two sections read as follows:

"**§ 43.03. Promotion of Prostitution**

"(a) A person commits an offense if, acting other than as a prostitute receiving compensation for personally rendered prostitution services, he or she knowingly:

"(1) receives money or other property pursuant to an agreement to participate in the proceeds of prostitution; or

"(2) solicits another to engage in sexual conduct with another person for compensation.

"(b) An offense under this section is a Class A misdemeanor.

"**§ 43.04. Aggravated Promotion of Prostitution**

"(a) A person commits an offense if he knowingly owns, invests in, finances, controls, supervises, or manages a prostitution enterprise that uses two or more prostitutes.

"(b) An offense under this section is a felony of the third degree."

**4.** The language of this application note seemingly requires that the sentencing court choose one federal offense as the offense most analogous to the state law violated by the defendant. The commentary to sentencing guideline section 2X5.1 similarly provides that where no guideline has been expressly promulgated, the sentencing court is required to apply the "most analogous offense guideline." In *United States v. Garcia,* 893 F.2d 250 (10th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1792, 108 L.Ed.2d 793 (1990), the Tenth Circuit, in an Assimilative Crimes Act case, noted that the commentary to section 2X5.1 was more restrictive than the Sentencing Reform Act, which "provides that where there is no applicable sentencing guideline, the court is to have 'due regard' for sentences prescribed by the guidelines for similar offenses and offenders." *Id.* at 254 (citing 18 U.S.C. § 3553(b) (Supp. V 1987)). The Court therefore held that "to the extent the commentary to § 2X5.1 exceeds the statutory mandate to have 'due regard' for analogous sentencing guidelines, the commentary is of no legal effect." *Id.* Langley did not raise as an objection below or as an issue on appeal the question of the legal effect of section 3553(b) on section 2E1.2's implicit requirement that the sentencing court choose the most analogous federal offense and apply its offense level in sentencing the defendant. It does not appear that *Garcia's* reasoning would *require* a lesser sentence than the district court imposed or would mean that for Langley's offense any sentence as severe as that imposed here would be either illegal or an abuse of discretion. We decline to *sua sponte* address *Garcia's* holding or its applicability to this case. *See, e.g., United States v. Brunson,* 915 F.2d 942 (5th Cir.1990); *United States v. Garcia–Pillado,* 898 F.2d 36, 39 (5th Cir.1990); *United States v. Johnson,* 718 F.2d 1317, 1325 n. 23 (5th Cir.1983).

The district court applied the sentencing guideline applicable to section 2421, former U.S.S.G. § 2G1.1(a), in determining Langley's base offense level of fourteen.[5]

Langley contends that there is no federal offense analogous to his "unlawful activity" here. Langley alternatively argues that if there were an analogous federal offense, it would be the offense of prostitution near a military installation proscribed by 18 U.S.C. § 1384, and not section 2421 of the Mann Act.

## Discussion

Langley contends that the Mann Act is not analogous to the relevant Texas Penal Code statutes violated by defendant because conviction under section 2421 of the Mann Act requires proof of transportation of persons for the purpose of prostitution.[6] There is no evidence that Langley transported prostitutes and he therefore reasons that he cannot be sentenced under the guidelines for section 2421.

■ Langley misperceives the purpose and function of the sentencing guidelines. The sentencing guidelines do not provide a source of the substantive law pursuant to which a person can be charged and convicted for a federal crime. The guidelines operate post-conviction in directing the sentencing authority to the appropriate sentence within the statutory range applicable to the offense of conviction. *See* 18 U.S.C. § 3551. Langley was properly convicted of violating 18 U.S.C. § 1952, his sentence is considerably under the section 1952 statutory maximum of five years' imprisonment and a $10,000 fine, and the guidelines applicable to section 1952 may properly be invoked.[7]

■ The commentary to sentencing guideline section 2E1.2 directs the sentencing court to select the federal offense most analogous to the state offense violated by the underlying unlawful activity. There exists no requirement that the defendant have been punishable under the most analogous federal offense in order for it to be properly deemed "most analogous." Numerous sections of the sentencing guidelines direct the court to apply the offense level of the federal offense most "analogous" to a particular unlawful activity[8]; it

---

5. This was adjusted downward by two points for acceptance of responsibility under section 3E1.-1(a), and upward by four points, under section 3B1.1(a), because Langley was an organizer or leader of criminal activity involving five or more persons. The resultant adjusted base offense level was sixteen. Langley does not complain of the section 3B1.1(a) adjustment.

6. The government appears to contend that "the most analogous federal offense," as used in section 2E1.2's commentary note two, means the federal offense most analogous to the Travel Act, not the federal offense most analogous to the underlying state offense. It argues that the Mann Act is most analogous because it, like the Travel Act, focuses on the element of interstate commerce. This interpretation contradicts the terms of application note two, which states that "[i]f the underlying conduct violates *state law,* the offense level corresponding to the most analogous federal offense is to be used" (emphasis added). Thus, the analogy to be sought is to the state law violated by the defendant's underlying conduct, and not to the Travel Act. *See United States v. Paden,* 908 F.2d 1229, 1238 (5th Cir.1990).

7. Langley argues that sentencing him in accordance with the sentencing guideline for section 2421 violates his rights under the due process clause because he could not have been convict-

ed for violation of section 2421. Langley's challenge in this respect raises no issue distinct from the issue of whether the district court properly chose the most analogous offense in accordance with the sentencing guidelines applicable to section 1952. If Langley intends to challenge the constitutionality of the imposition of his sentence under the sentencing guidelines, his claim is foreclosed by *Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), and *United States v. White,* 869 F.2d 822 (5th Cir.1989).

8. *See, e.g.,* U.S.S.G. § 2E1.1, comment. (n.2) (note identical to application note two of § 2E1.2); § 2E1.3, comment. (n.1) (same); § 2E1.4, comment. (n.1) (same); *see generally,* § 2F1.1, comment. (n.11) (suggesting that sentencing court enhance sentence "in a manner similar to the treatment of analogous counterfeiting offenses" under Chapter Two, Part B); § 2J1.1 & comment. (n.1) (suggesting that offense conduct will in certain cases be "sufficiently analogous to § 2J1.2 (Obstruction of Justice) for that guideline to apply"); § 2M1.1(a)(2) (directing sentencing court to apply offense level applicable to "most analogous offense" where conduct is not tantamount to waging war against the United States); § 2X5.1 (directing sentencing court to apply "the most analogous offense" guideline where offense is a felony or

would be unreasonable to read into every one of these sections the requirement that, in order to apply the analogous offense guideline, the sentencing court must effectively retry the defendant for an otherwise unrelated offense. "[A]nalogy does not mean identity. It implies difference." *Sturm v. Ulrich*, 10 F.2d 9, 11 (8th Cir. 1925). Recognition of this aspect of the common understanding of "analogous" is at least appropriate when applying a sentencing guidelines directive that state offenses be analogized to federal ones, as the Sentencing Commission obviously was aware that almost all federal offenses have special federalizing elements which would be absent from nearly all state offenses. Thus, that the state offense lacks the federalizing element of a given federal offense should not of itself necessarily prevent the two from being considered "analogous" for purposes of such a guidelines directive. This seems particularly so in respect to guidelines for the Travel Act and state prostitution offenses, as the latter are an express target of the former.

■ Langley also argues that, by passage of the Mann Act, Congress intended to punish only activities that involved involuntary prostitution and, because Langley's offense involved no coercive element, section 2421 is therefore not analogous. Langley cites legislative history in support of his contention that Congress' broad purpose in passing the Mann Act was to punish and deter prostitution activities accomplished by coercive transportation of women across state lines and not to "regulate the practice of voluntary prostitution." H.R.Rep. No. 47, 61st Cong., 2d Sess. at 10 (1909) (accompanying H.R. 12315).

Regardless of Congress' broad purpose in passing the Mann Act, the codification of this purpose unequivocally evidences an intent to criminalize some conduct irrespective of the presence of a coercive element. Only one of the four sections in the Mann Act, section 2422, makes the existence of coercion an essential element for the imposition of criminal liability.[9] Section 2421, which the district court found to be the most analogous federal offense, does not mention the element of coercion. Although the sentencing guideline applicable to sections 2421 and 2422 is the same, former U.S.S.G. § 2G1.1, offense levels under this sentencing guideline vary according to the presence of a number of factors. The guideline requires a four-level upward departure "[i]f the offense involved the use of physical force, *or* coercion by threats or drugs or *in any manner* ..." (emphasis added). Application notes one and two in the commentary to the guideline suggest, respectively, an eight-level downward departure where the offense was not committed for profit and an upward departure where bodily injury results from the use of physical force or coercion.

The structure of both the Mann Act and its applicable sentencing guideline demonstrate a sensitivity to varying degrees of severity of criminal conduct that belies Langley's claim that he has been unjustly cast with traffickers in white slavery. This sensitivity strengthens the analogy from the Mann Act to the state offense which Langley's unlawful conduct violated. Langley was sentenced in accordance with an offense that implicitly assumes the *absence* of coercion, thus enhancing the similarity between section 2421 and the rele-

Class A misdemeanor for which no guideline has been expressly promulgated).

9. The Mann Act comprises four sections, each of which punishes a different activity connected with prostitution and interstate commerce. 18 U.S.C. §§ 2421–24. Section 2421 imposes criminal liability on one who transports in interstate commerce any individual "with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense...." Section 2422 imposes criminal liability upon anyone who "knowingly persuades, induces, entices or

coerces any individual to travel" in interstate commerce for the purpose of engaging in illegal sexual activities. Section 2423 essentially restates the elements of the section 2421 offense, with the exception that the individual transported must be under the age of eighteen years and the penalty is enhanced. Section 2424 imposes criminal liability for failure to satisfy filing requirements with the Immigration and Naturalization Service with respect to the harboring of an alien individual for the purposes of prostitution or for any other immoral purpose.

vant state offense. Had Langley not been in business for profit, or had he employed coercion in any manner, his guideline offense level would have been adjusted (downward or upward) accordingly.

Langley's second principal challenge is that if, in fact, there exists a federal offense that can be characterized as most analogous to the relevant state offense, that offense is 18 U.S.C. § 1384[10] and not section 2421. Section 1384 imposes criminal liability for various activities associated with prostitution occurring on or near a military installation. Although the offense as described in section 1384 is somewhat analogous to the relevant state offense, it is not as analogous as section 2421.

 Violation of section 1384 differs significantly from section 2421 in that violation of the former constitutes a misdemeanor and violation of the latter a felony. 18 U.S.C. § 3559(a). One of the state offenses violated by Langley's conduct is, like section 2421, a felony. Tex.Penal Code Ann. § 43.04. It would be inappropriate to sentence Langley for violating an analogous misdemeanor offense where a more analogous felony offense exists, particularly in light of Congress' instruction that sentences imposed under the sentencing guidelines "reflect the seriousness of the offense." 18 U.S.C. § 3553(a)(2)(A). Further, section 1384 may be violated by one isolated act of prostitution unrelated to any third person or ongoing activity, while section 43.04 *requires* in essence management or control of an ongoing, multi-person prostitution enterprise, a far more serious matter.

**Conclusion**

The district court correctly applied section 2E1.2 in determining that 18 U.S.C. § 2421 is the federal offense most analogous to the section 43.04 state prostitution offense committed by Langley, and therefore correctly employed section 2G1.1, applicable to section 2421, in determining Langley's sentence.

Accordingly, Langley's conviction and sentence are

AFFIRMED.

---

10. The essential provisions of section 1384 read as follows:

"Within such reasonable distance of any military or naval camp, station, fort, post, yard, base, cantonment, training or mobilization place as the Secretary of the Army, the Secretary of the Navy, the Secretary of the Air Force, or any two or all of them shall determine to be needful to the efficiency, health, and welfare of the Army, the Navy, or the Air Force, and shall designate and publish in general orders or bulletins, whoever engages in prostitution or aids or abets prostitution or procures or solicits for purposes of prostitution, or keeps or sets up a house of ill fame, brothel, or bawdy house, or receives any person for purposes of lewdness, assignation, or prostitution in any vehicle, conveyance, place, structure, or building, or permits any person to remain for the purpose of lewdness, assignation, or prostitution in any vehicle, conveyance, place, structure, or building or leases or rents or contracts to lease or rent any vehicle, conveyance, place, structure or building, or part thereof, knowing or with good reason to know that it is intended to be used for any of the purposes herein prohibited shall be fined not more than $1,000 or imprisoned not more than one year, or both."