26 F.3d 133
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
John GABLE, Jr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mary Ann FUNDERBURK, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
John G. THOMAS, Defendant-Appellant.
 Nos. 93-30061, 93-30127 and 93-30173.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 7, 1994.
Decided June 15, 1994.
 
 Before: HUG, HALL, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellants John Gable, Mary Ann Funderburk and John Thomas were all participants in an interstate prostitution business which operated from 1987 to 1991. Appellants were charged with money laundering, interstate transportation for purposes of prostitution, and Travel Act violations, as well as conspiracy relative to these allegations.
 
 
 3
 The district court had jurisdiction pursuant to 18 U.S.C. Sec. 3231. We have jurisdiction pursuant to 18 U.S.C. Sec. 1291 and we affirm.
 
 I.
 
 4
 Appellants argue that the government either lost, destroyed, or failed to produce exculpatory independent contractor agreements seized from Gable's residence. The second page of these agreements, which were allegedly signed by all of the escorts, stated "that if owner is placed upon notice that contractor has engaged in any sexual conduct which is contrary to any duly enacted statute or ordinance, such acts shall constitute grounds for immediate termination of this agreement."
 
 
 5
 The government must only disclose evidence that is both favorable to the accused and "material either to guilt or to punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963). Evidence, including that used solely for impeachment, is material only "[i]f there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985); see also United States v. Brumel-Alvarez, 991 F.2d 1452, 1461 (9th Cir.1992). Because the missing pages of the contract agreements were not material, we reject Appellants' argument.
 
 
 6
 At trial, the government called four escorts as witnesses. Only two of these escorts were asked about the agreements, both of whom testified that they did not sign or did not remember signing any agreement. Appellants contend that the missing pages of these agreements were necessary to: 1) impeach the escorts; and 2) establish Appellants' expectation that the escorts would follow the law. The record does not support this contention.
 
 
 7
 As noted by the district court, the defense was still able to contest the information implicated by the agreements. Two of the escorts called as witnesses were cross examined about the agreements. Also, Gable himself testified that all escorts had signed the agreements. Three of the agreements were actually introduced as exhibits at trial. Two of the agreements were blank, but contained the exculpatory language on page two. The first page of the third agreement, signed by an escort who testified at trial, was also introduced. Because a reasonable likelihood of a different outcome does not exist, we find that the missing agreements were not material and thus their absence does not require reversal.[1]
 
 II.
 
 8
 Appellants Gable and Funderburk argue that the district court abused its discretion in allowing the government to reopen its case in order to provide evidence that certain banks in which checks had been deposited were members of the federal reserve system. The caselaw addressing motions to reopen has focused on the effect the reopening had on the opposing party. See United States v. Huber, 772 F.2d 585, 592 (9th Cir.1985) (affirmed grant of motion to reopen where opposing party failed to show that he had insufficient time to respond to newly introduced evidence); United States v. Blankenship, 775 F.2d 735, 741 (6th Cir.1985) ("The most important consideration is whether the opposing party is prejudiced by reopening.").
 
 
 9
 Here, the district court was correct in concluding that Appellants were not prejudiced by the reopening. Whether the banks were members of the federal reserve system is not the type of issue that can be subject to reasonable dispute.[2] Further, the district court permitted reopening at the end of the government's case in chief, thus allowing sufficient time for Appellants to offer contradictory evidence. See id. We find that no abuse of discretion occurred.
 
 III.
 
 10
 Appellants argue that they were deprived of a fair trial when the prosecutor commented during closing argument on the defense's failure to call witnesses to prove that Appellants were not operating a prostitution business.
 
 
 11
 "While prosecutors may not comment on a defendant's failure to testify, they may comment on the defense's failure to call other witnesses." United States v. Reyes, 966 F.2d 508, 509 (9th Cir.), cert. denied, 113 S.Ct. 355 (1992). See also United States v. Castillo, 866 F.2d 1071, 1083 (9th Cir.1988). Here, the record reveals that the prosecutor commented only on the failure of the defense to call other witnesses to rebut the testimony presented. The prosecutor did not refer to Appellants' decision not to testify and did not imply that Appellants were required to prove their innocence. Further, the district court instructed the jury on the presumption of innocence, the right to remain silent, and the fact that there was no burden on the defense to call any witnesses. We reject Appellants' argument that prosecutorial comments made during closing argument denied them a fair trial. See id.
 
 IV.
 
 12
 Appellant Funderburk made a number of post-trial motions. After the district court's denial of these motions, but prior to sentencing, Funderburk underwent a psychological examination by Dr. Schmaljohn, who concluded that she suffered from Battered Woman's Syndrome and post-traumatic stress disorder at the time she committed the crimes for which she was convicted. On this basis, the district court departed downward pursuant to U.S.S.G. Sec. 5K2.12; Coercion and Duress. Funderburk now argues that she is entitled to a new trial so she can raise the affirmative defense of duress.
 
 
 13
 Funderburk should have presented her claim by means of a Fed.R.Crim.P. 33 motion for a new trial on the ground of newly discovered evidence. However, no such motion was made. Because the issue did not arise until after trial and there is no district court ruling to review, we find that no jurisdiction exists to grant Funderburk's request.[3]
 
 V.
 
 14
 Each Appellant moved for judgment of acquittal based upon the insufficiency of the evidence. Appellants Gable and Funderburk argue that there is insufficient evidence connecting them to any illegal activities undertaken by the escorts. This argument lacks merit as the record amply supports a conclusion that the escort business was a front for prostitution and that Appellants Gable and Funderburk knew and intended the illegal activities of the escorts. Testimony from government witnesses, including escorts, a driver for the escort service, customers, and police officers, clearly established that a prostitution operation existed. This testimony also documented both Appellants' extensive involvement in the operation. The evidence linking Appellants to the operation included: 1) escort testimony about coming to Gable and Funderburk to get condoms; 2) Funderburk interviewing prospective escorts and advising them to always use condoms; 3) a fining system that pressured escorts to provide sexual services; and 4) comments and actions by Gable clearly demonstrating his knowledge and encouragement of illegal sexual activities. Sufficient evidence existed to support the convictions of Appellants Gable and Funderburk.
 
 
 15
 Appellant Thomas was convicted of using an interstate air carrier system for the purpose of promoting the prostitution operation in violation of 18 U.S.C. Sec. 1952. The basis for this conviction is Thomas' alleged mailing of credit card receipts from Washington to Appellant Gable in Idaho. Per the district court's jury instruction, the government had to prove that: 1) Thomas used the facilities of interstate commerce; 2) he did so with the intent to promote or carry on the prostitution operation; and 3) he did thereafter promote or carry on the prostitution operation.
 
 
 16
 Thomas initially argues that the government failed to prove that he was the actual person who mailed the package. The airbill identified "John Thomas, Spokane, Washington" as the shipper. Further, Agent Bethke testified that he observed Thomas make the shipment evidenced by the airbill. While it is true that Bethke never made a positive identification in court, it seems clear from his testimony that he was referring to Thomas. The government sufficiently demonstrated that it was, in fact, Thomas who mailed the package.
 
 
 17
 Thomas also argues that no proof was offered to show that the package actually contained credit card slips. While the actual airbill listed the contents as "CC slips", no government witness conclusively established that there were actual credit card slips in the package or that "CC" was shorthand for credit card. However, an escort testified that when working in Spokane, she would turn credit card receipts over to the drivers. The escort also stated that Thomas was employed as a driver for the operation. The government further established that credit card records from the Spokane operation were found at Appellant Gable's Boise residence. Despite the lack of direct evidence regarding the contents of the package, we find the evidence sufficient for the jury to reasonably conclude that the package contained credit card slips.
 
 
 18
 Thomas next argues that the government failed to provide evidence that the "CC slips" were used to carry on or promote the operation once they arrived in Boise. A copy of the airbill was found in Appellant Gable's car in Boise. This airbill conclusively established that the package was picked up by codefendant Debbie Gable. Government witnesses also testified as to the role that credit card receipts played in the management of the operation. The record amply supports the conclusion that the credit card slips were used to carry on or promote the prostitution operation and therefore we reject Thomas' sufficiency of the evidence claim.
 
 VI.
 
 19
 Appellant Funderburk claims that the district court erred in refusing to give her supplemental proposed jury instructions. A district court does not err by failing to give a theory of the case instruction if the other instructions adequately cover the defense theory. See United States v. Lopez-Alvarez, 970 F.2d 583, 597 (9th Cir.), cert. denied, 113 S.Ct. 504 (1992); United States v. Sehnal, 930 F.2d 1420, 1427 (9th Cir.), cert. denied, 112 S.Ct. 300 (1991).
 
 
 20
 Here, Funderburk submitted supplemental jury instructions relating to: 1) the "willfulness" requirement of acts relative to aiding and abetting; 2) the "mere presence" defense; 3) the definition of an agreement as opposed to a mere association; 4) the "knowledge" requirement relative to membership in a conspiracy and the meeting of minds requirement for an agreement; and 5) the legal versus illegal object of a conspiracy. The district court's set of jury instructions, most of which came from the Ninth Circuit Model Jury Instructions, adequately covered each of Funderburk's theories of defense. Because the actual instructions given covered the same substance as the supplemental proposed instructions, we reject Funderburk's argument. See Lopez-Alvarez, 970 F.2d at 597; Sehnal, 930 F.2d at 1427.
 
 VII.
 
 21
 Appellant Gable challenges four aspects of the district court's determination of his offense level. None of the sentencing issues presented by Gable on this appeal were contested before the district court. Issues not raised below, if cognizable at all, are reviewed for plain error. United States v. Carvajal, 905 F.2d 1292, 1296 (9th Cir.1990).
 
 
 22
 A. Relevant conduct.
 
 
 23
 Counts 24 through 30 charged money laundering through the payment of escorts by check. The amount of checks involved in these counts was $2574. However, the district court increased Gable's base offense level by three points by including as relevant conduct $371,000 which was found to be the amount of money involved in the laundering scheme. Gable argues that the $371,000 relevant conduct amount is completely arbitrary and should not have been used to increase his sentence.
 
 
 24
 Conclusory findings are insufficient to support sentence enhancements. United States v. Conkins, 9 F.3d 1377, 1385 (9th Cir.1993). Gable's presentence report ("PSR"), which was adopted in its entirety by the district court, did not specify which checks were included in the $371,000 estimate nor how this exact amount was arrived at. However, the PSR did note that the proceeds from the prostitution operation deposited in banks totaled $676,000. The PSR also examined the Gables' joint tax returns and noted that no one involved in the operation had significant outside employment. The PSR states "The conservative estimate of $371,000 is corroborated by checks written for expenses directly related to the 'escort' businesses during the years 1987 through July, 1991. Checks written for unrelated purposes were not factored into the calculation of $371,000." The PSR then lists the banks the checks were written on and states that the checks were endorsed by either Appellant Gable, codefendant Debbie Gable, or Appellant Funderburk. While these findings certainly could have been more specific, the district court's reliance on them does not constitute plain error.[4]
 
 
 25
 B. Leader or organizer of criminal activity.
 
 
 26
 Gable next argues that the district court improperly enhanced his offense level by four points by adopting the PSR's conclusion that Gable was the leader of a criminal activity involving five or more participants. See U.S.S.G. Sec. 3B1.1(a). Essentially, Gable contends that the district court failed to make specific findings as to which five people were "participants" permitting application of Sec. 3B1.1(a).[5] This argument is without merit.
 
 
 27
 Sec. 3B1.1(a) is not limited to the offense of conviction. Rather, a defendant's role in the offense depends on all conduct within the scope of the guideline's relevant conduct provisions. See United States v. Lillard, 929 F.2d 500, 503 (9th Cir.1991). Here, the district court adopted the PSR, which thoroughly described the illegal activities of more than five participants in the prostitution operation. The district court's finding that Gable played a leadership role does not constitute plain error and we affirm the four level sentence enhancement imposed on Gable.
 
 
 28
 C. Double counting.
 
 
 29
 Gable next contends that enhancement of his offense level for both the amount of money involved in the laundering scheme (Sec. 2S1.1) and for being a leader of the criminal activity (Sec. 3B1.1(a)) is impermissible double counting. "Unless the conduct punished by one guideline is akin to a 'lesser included offense' of another guideline, considering the same act in applying two guidelines isn't double counting." United States v. Snider, 976 F.2d 1249, 1252 (9th Cir.1992) (citations omitted). Further, there is no double counting if each guideline provision stems from different concerns for enhancing a sentence. United States v. Kelly, 993 F.2d 702, 705 (9th Cir.1993).
 
 The Background Note to Sec. 2S1.1 states:
 
 30
 The amount of money involved is included as a factor because it is an indicator of the magnitude of the criminal enterprise, and the extent to which the defendant aided the enterprise....
 
 
 31
 While the extent of the defendant's participation is mentioned, the primary focus of Sec. 2S1.1 is on the size of the enterprise. In contrast, the enhancement provided by Sec. 3B1.1(a) emphasizes the defendant's relative responsibility.[6] "The [Sec. 3B1.1(a) ] leadership enhancement addresses a somewhat different concern, namely [defendant's] role within the group of coconspirators. As an organizer or leader, [defendant] is more harshly punished than if he had been a follower or a minor participant in the same scheme." Kelly, 993 F.2d at 705. The Secs. 2S1.1 and 3B1.1(a) enhancements serve sufficiently different purposes such that they both may be applied to the same sentence. Therefore, we find that Gable's sentence was not improperly enhanced by virtue of impermissible double counting.
 
 
 32
 D. Improper grouping.
 
 
 33
 Gable's final argument is that the district court erroneously separated his counts of conviction into the following three groups: 1) Counts 24 through 30 (money laundering); 2) Counts 22 and 23 (travel and transportation); and 3) remaining counts (racketeering and use of interstate systems). The division of related counts into three groups, as opposed to just one or two, resulted in a one point increase in Gable's offense level.
 
 
 34
 Gable's primary argument is that the money laundering counts and the racketeering counts should be grouped together pursuant to Sec. 3D1.2(b) because the activities underlying these counts were part of a single illegal prostitution operation. Sec. 3D1.2(b) states that "All counts involving substantially the same harm shall be grouped together in a single Group." The guideline section further directs the grouping of counts when they "involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan."
 
 
 35
 When, as in the present case, the offenses are victimless crimes, the grouping decision must focus on the nature of the interest invaded by each offense. U.S.S.G. Sec. 3D1.2, Application Note 2. "[T]he offenses should not be grouped if they pose threats to distinct and separate societal interests." United States v. Barron-Rivera, 922 F.2d 549, 554-55 (9th Cir.1991).
 
 
 36
 In adopting Gable's PSR, the district court accepted that "The underlying criminal activity of emphasis in this case is the laundering of monetary proceeds received from prostitution services through the claimed legitimate businesses of 'escort' services and the participation in racketeering activities that supported these claimed legitimate businesses." Gable PSR at 6-7. This interrelation provides support for the conclusion that all of these activities were in furtherance of a common objective or scheme. See United States v. Porter, 909 F.2d 789, 793 (4th Cir.1990) ("One could envision an illegal enterprise which generated money through illegal gambling and simultaneously laundered those monies as part of the same continuing transaction or common scheme.").
 
 
 37
 However, the racketeering offenses, money laundering offenses and prostitution offenses implicate different societal interests and are therefore properly subject to separate grouping. While this is certainly true of prostitution, we note that discerning between the different societal interests harmed by money laundering and racketeering is more difficult. Nonetheless, ambiguities should be resolved in accordance with Sec. 3D1.2's purpose of grouping counts involving "substantially the same harm", see U.S.S.G. Sec. 3D1.2, Application Note 2, and we find that the money laundering and racketeering offenses were enacted to address different societal problems. See United States v. Gallo, 927 F.2d 815, 823-24 (5th Cir.1991) (concluding that the societal interest invaded by money laundering--disbursing capital from legitimate economic institutions to criminals--differs from that invaded by drug offenses). The harm to society caused by engaging in the racketeering offenses is the operation of a business enterprise through a pattern of racketeering activity. The harm to society from the money laundering offenses is the disguising of the source of the funds acquired illegally so that it appears that the funds were legally acquired. Because the societal harms implicated by the relevant offenses are sufficiently different to support the district court's grouping decision, we affirm.[7]
 
 VIII.
 
 38
 Appellant Funderburk makes several sentencing arguments in addition to the relevant conduct and improper grouping arguments that were decided earlier in this memorandum disposition.
 
 
 39
 A. Minor or Minimal participation.
 
 
 40
 Funderburk initially argues that the district court erred in refusing to decrease her offense level based on her role in the offense under U.S.S.G. Sec. 3B1.2. The record clearly demonstrates that Funderburk played an active role in the prostitution ring. While Funderburk's role was less than Appellant Gable's, she has failed to carry her burden of establishing that she was a minor or minimal participant. Accordingly, we affirm the district court's denial of a downward adjustment for minor or minimal participation.
 
 
 41
 B. Acceptance of responsibility.
 
 
 42
 Funderburk next argues that the district court erred in failing to grant her a two level decrease for acceptance of responsibility. Funderburk admits not accepting responsibility, but contends that she was prevented from doing so by the Battered Woman's Syndrome and post-traumatic stress disorder. We agree with the government that Funderburk's argument that she would have accepted responsibility is based on speculation. Funderburk has not offered proof establishing acceptance of responsibility and therefore the district court did not clearly err in denying her an offense level decrease.
 
 
 43
 C. Criminal history.
 
 
 44
 Funderburk argues that the district court erred in concluding her criminal history category was II. In 1987, Funderburk pled guilty to a felony insufficient check charge and received a withheld judgment and two years of unsupervised probation. The PSR added one criminal history point for this offense. The PSR added another two criminal history points because the instant offenses were committed during Funderburk's probationary period.
 
 
 45
 Funderburk claims that a withheld judgment does not constitute a prior sentence for purposes of the guidelines. This claim is without merit. U.S.S.G. Sec. 4A1.2(f) states that a diversionary disposition resulting from an admission of guilt in a judicial proceeding is counted as a sentence under Sec. 4A1.1(c) even if the conviction is not formally entered. See U.S.S.G. Sec. 4A1.2(f); see also United States v. Hatchet, 923 F.2d 369, 376 (5th Cir.1991) (holding that prior "deferred adjudication probation" counts as a prior sentence). Thus, Funderburk's prior withheld judgment was properly counted as a "sentence" for guideline purposes. We affirm the district court's conclusion that Funderburk's criminal history category was II.[8]
 
 IX.
 
 46
 Appellant Thomas was convicted of violating 18 U.S.C. Sec. 1952, which proscribes the knowing use of a facility of interstate commerce with the intent to promote unlawful activity--here, the operation of a prostitution business. Thomas was sentenced pursuant to U.S.S.G. Sec. 2E1.2, which provides for an offense level of six or the offense level of the underlying unlawful activity, whichever is higher. The commentary to 2E1.2 states that where the "underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used." Operating a prostitution business violates the laws of Idaho and Washington. After expressing some concerns, the district court found the most analogous federal offense to be 18 U.S.C. Sec. 2421 ("Mann Act"), which is the knowing transportation of individuals in interstate or foreign commerce for illegal sexual activity. Thomas argues that 18 U.S.C. Sec. 1955,[9] which criminalizes engaging in the gambling business, is the most analogous federal crime.
 
 
 47
 In United States v. Langley, 919 F.2d 926 (5th Cir.1990), the Fifth Circuit upheld a district court determination that Sec. 2421 was the federal offense most analogous to the state prostitution offense committed by defendant. Id. at 930. In doing so, the court stated "There exists no requirement that the defendant have been punishable under the most analogous federal offense in order for it to be properly deemed 'most analogous'." Id. The court also noted that "[A]nalogy does not mean identity. It implies difference." Id. at 931 (quoting Strum v. Ulrich, 10 F.2d 9, 11 (8th Cir.1925). While Sec. 2421 does not provide a perfect match, it is more analogous than the Sec. 1955 gambling statute. The underlying activity involved in this case is prostitution, which is precisely what Sec. 2421 was designed to prevent. We therefore affirm the district court's use of Sec. 2421 as the most analogous offense.
 
 
 48
 We AFFIRM.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 While the district court did state the language on the second page of the agreements was "exculpatory in nature, and it is the type of thing that should not be overlooked", see Government ER at 24, these comments were made before trial and did not involve the materiality of the evidence. In fact, the district court, in denying a motion to dismiss made during trial, found that the defense was not prejudiced by the absence of the agreements. Id. at 54
 
 
 [2]
 After the case was reopened, the parties stipulated that the subject banks were members of the interstate banking system
 
 
 [3]
 Funderburk argues that we should review for plain error because the issue was not raised at trial. The government argues that in order for appellate jurisdiction to exist, we must address the issue in the context of an appeal from a denial of a Rule 33 motion. We believe that Funderburk's argument lacks substantive merit under either of these standards. Funderburk concedes that there was grand jury testimony regarding the beatings and abuse inflicted upon her by Appellant Gable. This undermines any argument that Funderburk could not have requested a psychological evaluation prior to trial to determine whether or not to raise duress as an affirmative defense. Also, Funderburk has failed to demonstrate: 1) that a new trial would probably result in an acquittal; or 2) that reversal is mandated to prevent a miscarriage of justice or to preserve the integrity of the judicial process
 
 
 [4]
 Appellant Funderburk raises the same relevant conduct claim as Appellant Gable. In addressing Funderburk's claim, the government states the probation officer arrived at the $371,000 amount by virtue of a "check analysis" conducted by an IRS agent. "This estimate was arrived at by analyzing all checks written by the business enterprise on nine different bank accounts between January 2, 1987, and July 22, 1991." Addendum to Funderburk's PSR at 3. We reject Funderburk's relevant conduct claim for the same reasons we rejected Gable's claim
 5 U.S.S.G. 3B1.1, Application note 1 defines a "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the offense (e.g. an undercover law enforcement officer) is not a participant."
 
 
 [6]
 The Background Note to Sec. 3B1.1 states:
 This section provides a range of adjustments to increase the offense level based upon the size of the criminal organization (i.e., the number of participants in the offense) and the degree to which the defendant was responsible for committing the offense. This adjustment is included primarily because of concerns about relative responsibility. However, it is also likely that persons who exercise a supervisory or managerial role in the commission of an offense tend to profit more from it and present a greater danger to the public and/or are more likely to recidivate. (emphasis added).
 
 
 [7]
 We reject Appellant Funderburk's improper grouping argument for the same reasons
 
 
 [8]
 Because Funderburk's prior withheld judgment constitutes a sentence, it was properly used to further increase her sentence for committing a crime while on probation
 
 
 [9]
 18 U.S.C. Sec. 1955 states:
 Whoever conducts, finances, manages, supervises, directs or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.