UNITED STATES of America, Appellee,

v.

Austin W. EVANS, Jr., Appellant.

No. 93–4043.

United States Court of Appeals,
Eighth Circuit.

Submitted May 9, 1994.

Decided July 28, 1994.

---

Bruce W. Simon, Kansas City, MO, argued (Joseph S. Lyons, Towson, MD, on the brief), for appellant.

John D. Stewart of J. Daniel Stewart, argued, for appellee.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge and BEAM, Circuit Judge.

BEAM, Circuit Judge.

Austin W. Evans, Jr., appeals his conviction and sentence on one count of extortion under color of official right in violation of 18 U.S.C. § 1951 (the Hobbs Act) and five counts of using the United States Mail to defraud the citizens of the State of Maryland of the intangible right to honest services in violation of 18 U.S.C. §§ 1341 and 1346. We affirm the judgment of the district court.[1]

## I. BACKGROUND

From October 1988 until February 1992, Evans was the manager of the Self–Insurance Program for the State of Maryland's Motor Vehicle Administration. Under Maryland law, businesses may self-insure for potential liability claims. To do so, businesses must show that they have the capacity to pay for any property or bodily injury liability arising from their potential involvement in an accident. Self-insured businesses sometimes use a "reinsurer," an insurance company, to post a surety bond. As manager of the Self–Insurance Program, Evans had plenary authority to approve applications for self-insurance.

The charges against Evans arose out of his relationship with Meadowlark Insurance Company, M & M Management Company and Ferrell T. Riley, who operated both companies in Kansas City, Missouri.[2] Between June and December 1991, Riley and the companies he controlled paid Evans more than $17,000.

During this same time period, Evans introduced Riley to representatives of the Baltimore City School Business Contractor's Association (BCSBCA) and recommended Meadowlark as a surety bond writer. Evans subsequently approved BCSBCA's self-insurance application with Meadowlark as its surety bond writer. Ned Kodeck, Evans's superior at the Maryland Motor Vehicle Association, testified that he later found several deficiencies in BCSBCA's application relating to prior claims history and other financial security, including the fact that Meadowlark

---

1. The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

2. For convenience, we will refer to both companies as "Meadowlark."

was not a licensed insurance company in Maryland. BCSBCA eventually had to replace its Meadowlark bond in order to remain self-insured.

Evans also introduced Riley to George Jernigan, controller for Rentals Unlimited, Inc. (Rentals), a self-insured construction equipment and vehicle rental business. When Evans went to Rentals, ostensibly to examine the books, he brought Riley and other Meadowlark representatives with him. Riley outlined a plan for Rentals to reduce its security requirement by purchasing a Meadowlark umbrella policy. Evans told Jernigan that he would accept Rentals's application with lower security if Rentals also had Meadowlark's umbrella coverage. Rentals rejected Meadowlark's offer. Evans and Riley later returned for another meeting and Riley sold Rentals a Meadowlark surety bond. Jernigan testified that Evans's assured him the Meadowlark bond would satisfy the Self-Insurance Program. After Evans was terminated as manager of the Self-Insurance Program, Rentals's had to replace the Meadowlark bond to remain self-insured.

Evans testified at trial that approximately $9,000 of the payments he received from Riley and Meadowlark were for research he did on other states' self-insurance regulations and that the other $8,000 was a personal loan he used to pay for dental work. FBI Special Agent Ronald Halter testified that during the investigation, however, Evans admitted that a portion of Meadowlark's payments to him were made in exchange for his assistance to Meadowlark in his official capacity, that he felt guilty about accepting the money, that he did not report the income on his taxes and that Riley had suggested concocting the story about out-of-state research projects. The jury was evidently persuaded by the government's version of events.

**3.** We need not resolve this dispute. The record is clear that at the very least, unlicensed status raises red flags among insurance regulators. None of the insurance experts who testified had ever witnessed approval of a surety bond issued by an unlicensed insurer. The government contends that an unlicensed insurer might thus have an incentive to bribe a state official in order to do business in the state. Meadowlark appears to have a history of operating without a license.

Evans argues on appeal that the district court erred by questioning one of the defense witnesses, that the court submitted two improper jury instructions, and that the court erred in sentencing in several respects.

## II. DISCUSSION

### A. Questioning of Defense Witness

■ Evans contends that the court erred by questioning the defense insurance law expert, Edward Birrane. There was considerable conflict at trial over whether Meadowlark was licensed as an insurance company in Maryland and whether the answer to this question determined the legality of Meadowlark's surety bond sales in Maryland.[3] After Birrane, a former Maryland Insurance Commissioner, had been questioned extensively on the difference between licensed and unlicensed insurers and on whether the Meadowlark surety bonds could legally be sold in Maryland, the court intervened in recross examination:

Q. [by prosecutor] Employees in your department weren't allowed to take money from people they were regulating; were they?

A. No.

THE COURT: Nor were they allowed to take money from companies whether they were licensed or not licensed in the state?

THE WITNESS: That's correct.

THE COURT: Can't take from either one?

THE WITNESS: No. The employees in the Insurance Division were not permitted to take money from any insurer or any insuring entity.

THE COURT: Whether they were licensed to do business in the state or not licensed; isn't that correct?

Riley originally operated Meadowlark in Wyoming, until the Wyoming Insurance Commission asked him to relocate. Riley then moved Meadowlark's principal office to New Mexico and finally to Kansas City, Missouri, where Meadowlark was located during its relationship with Evans. Meadowlark was not licensed to operate as an insurance company by New Mexico, Missouri or Maryland.

THE WITNESS: That is correct, Your Honor. I am sorry.

THE COURT: All right, thank you. You may step aside.

Transcript at 472–73. According to Evans, the court's questions left the jury with the impression that "either, a) the mere acceptance of gratuities without a quid pro quo, or, b) the acceptance of monies for a legitimate unrelated purpose would sustain a conviction in this case." Appellant's Brief at 22. Evans points out that neither of these scenarios would violate the Hobbs Act because extortion under color of official right requires a quid pro quo for an official action. *See Evans v. United States*, — U.S. —, —, 112 S.Ct. 1881, 1889, 119 L.Ed.2d 57 (1992) ("Government need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts"); *McCormick v. United States*, 500 U.S. 257, 273–74, 111 S.Ct. 1807, 1816–17, 114 L.Ed.2d 307 (1991) (extortion under color of official right requires benefit in exchange for performing or abstention from performing an official act).

"We have always been reluctant to disturb a judgment of conviction 'by reason of a few isolated, allegedly prejudicial comments of a trial judge,' *United States v. Bland*, 697 F.2d 262, 265 (8th Cir.1983), particularly in a long trial." *United States v. Lueth*, 807 F.2d 719, 727 (8th Cir.1986). In this case, we cannot say that these few isolated questions misled the jury in any way. The district judge stated in a side bar that he was merely clearing up the possible misimpression, which he felt the defense was encouraging, that a Self–Insurance Program manager would not violate the Hobbs Act by accepting a bribe from an unlicensed insurance company. Transcript at 476. We understand the court's concern from our own review of the transcript.

The trial judge "has the prerogative, and at times the duty, of eliciting facts he deems necessary to the clear presentation of the issues." *Dranow v. United States*, 307 F.2d 545, 572 (8th Cir.1962). To this end, the judge may question witnesses so long as he preserves an attitude of neutrality. *Id.* We do not think that the district court stepped beyond these bounds. The court merely pointed out that the licensing dispute was irrelevant to the question of whether Evans accepted a bribe to perform an official function. We certainly do not find that the "district court's comments *throughout the trial* were sufficiently one-sided and distractive to defendant's case to deprive him of a fair trial." *United States v. Van Dyke*, 14 F.3d 415, 418 (8th Cir.1994) (emphasis added). Indeed, this exchange is the only allegedly prejudicial commentary in five hundred pages of transcript.

If the jury had been misled at all, the district court's Hobbs Act instruction cured any misperceptions and clearly set forth the quid pro quo for official conduct requirement.[4] Accordingly, we find no error in the court's questions.

## B. Jury Instructions

Evans objects to jury instructions thirteen and fourteen which explain the extortion under color of official right charge and the mail fraud charges, respectively. A district court has wide discretion in formulating jury instructions and we will not reverse "as long as the entire charge fairly and adequately contains the law applicable to the case." *Board of Water Works Trustees v. Alvord, Burdick & Howson*, 706 F.2d 820, 823 (8th Cir.1983).

Evans admits that the extortion instruction "required that the public · official

---

4. The district court instructed the jury that:

Extortion "under color of official right" is the wrongful taking by a public official of money or property not due him or his office, whether or not the taking was accompanied by force, threats or use of fear. So if a public official voluntarily and *intentionally misuses his public office and power* for the wrongful purpose of inducing a victim to part with property, such activity constitutes extortion.

Extortion is committed when property is obtained with the consent of the victim under color of official right. A passive acceptance of a benefit by a public official constitutes extortion if the public official knows that he is being offered the payment *in exchange for* a specific exercise of his official power, and the official need not take any specific action to initiate or induce the offering of the benefit.

Instruction 13, Appellee's Addendum (emphasis added).

know that payment was being extended for a specific exercise of official power," Appellant's Brief at 37, but complains that the instruction fails to identify the specific act or power that was the subject of the quid pro quo. He contends that the court should have instructed the jury that the government had the burden to prove that Meadowlark paid Evans for its *wrongful* qualification to sell insurance in Maryland.[5] Under Evans's theory, if Evans had the authority to approve unlicensed insurance sales as manager of the Self–Insurance Program, or if Meadowlark was actually licensed in Maryland, Evans did not commit extortion under color of official right.

■ The Hobbs Act requires proof, among other elements, that the defendant received a benefit in exchange for the performance or nonperformance of an official act. *See Evans,* —— U.S. at ——, 112 S.Ct. at 1889; *McCormick,* 500 U.S. at 273–74, 111 S.Ct. at 1816–17. The district court instructed the jury on this requirement. *See supra* note 4. Evans has offered no support for his contention that the government must prove that the official conduct was also wrongful. The statute does not suggest that the government must prove anything more than that the official conduct was undertaken in return for a benefit. We reject Evans's proposed addition to the statute.

■ Evans attacks the mail fraud instruction on similar grounds. The court instructed the jury that Evans deprived the State of Maryland of the intangible right to honest services as manager of the Self–Insurance Program if the jury found, among other elements, that Evans:

> as Manager of the Self[–]Insurance Program for the Motor Vehicle Administration of the Maryland Department of Transportation, directly and indirectly influenced

and attempted to influence companies applying to become self[-]insured to purchase surety bonds from Meadowlark Insurance Company and approved Meadowlark's surety bonds submitted with applications by such companies to become self-insured, and defendant received over $17,000 which was not due him or his office from the persons who operated and controlled Meadowlark Insurance Company.

Instruction 14, Appellee's Addendum. Evans argues that language regarding whether Meadowlark was licensed in Maryland should have been added to this instruction as well. The determination of whether Meadowlark was properly licensed, however, is not essential to Evans's conviction for mail fraud. *See* 18 U.S.C. §§ 1341 and 1346.

■ It is unfortunate that the government and Evans were sidetracked at trial by their dispute over the tangential question of whether unlicensed insurers could issue surety bonds in Maryland under the Self–Insurance Program.[6] However, the jury was properly instructed on the elements of extortion under color of official right and mail fraud. We cannot find fault with the district court's failure to instruct the jury on something that is not the law. Both challenged instructions make clear that Evans could not be convicted if the jury believed Evans's claims that he received $17,000 from Meadowlark for unrelated consulting and as a loan for dental work. The jury clearly did not believe Evans. We find no error in the district court's instructions.

### C. Sentencing

Evans challenges the district court's sentencing calculation on several grounds. The court computed an offense level of twenty-three and a criminal history category of I, resulting in a sentencing range between forty-six and fifty-seven months. The court sentenced Evans to fifty-seven months im-

---

**5.** Evans's objection to the instruction at trial involved the lack of language concerning whether Evans knew Meadowlark was unlicensed in Maryland. Transcript at 499.

**6.** The issue was originally raised in the indictment, which stated that Maryland law requires that insurance companies providing surety bonds be licensed and that Meadowlark was not licensed in Maryland. Evans hints at a variance argument. A variance in the indictment occurs

when the evidence at trial proves facts *materially* different from the essential elements of the indictment. *United States v. Huntsman,* 959 F.2d 1429, 1435 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 201, 121 L.Ed.2d 143 (1992). The license issue was not an essential element of the indictment and the evidence at trial did not materially differ from the offenses as described in the indictment. Thus, we find no variance.

prisonment. Evans contends that the court erred by increasing his base offense by two levels for accepting more than one bribe under USSG § 2C1.1(b)(1). He claims that the court overrepresented the loss under section 2C1.1(b)(2)(A) by using the amount of the expected premiums from policies Meadowlark sold to BCSBCA and Rentals. Finally, Evans argues that the court erred in assessing a two-level increase for obstruction of justice based on perjury under section 3C1.1.

We review the district court's findings of fact for clear error and review application of the guidelines to the facts de novo, giving due deference to the district court's application of the guidelines. 18 U.S.C. § 3742(e); *United States v. Claymore*, 978 F.2d 421, 423 (8th Cir.1992). Our review of the record reveals no error in the district court's factual findings or application of the guidelines.

## III.  CONCLUSION

For the reasons discussed above, we affirm the judgment of the district court.