_____

No. 95-1525
_____

United States of America,          *
                                   *
     Plaintiff - Appellee,          *
                                   *  Appeal from the United States
     v.                             *  District Court for the
                                   *  Eastern District of Missouri.
Robert M. Baker,                    *
                                   *
     Defendant - Appellant.         *

_____

                    Submitted: November 15, 1995

                      Filed:  April 29, 1996
                             _____

Before McMILLIAN, FLOYD R. GIBSON, and LOKEN, Circuit Judges.
                             _____

LOKEN, Circuit Judge.


     St. Louis police officer Robert M. Baker appeals his conviction and
thirty-month sentence for violating the Travel Act, 18 U.S.C. § 1952(a).
Baker asserts that his extortion of a St. Louis motorist was not linked to
interstate commerce, that the district court improperly admitted evidence
Baker had been extorting motorists for more than ten years, and that the
court misapplied the Sentencing Guidelines.  We remand for further
consideration of one sentencing issue but otherwise affirm.


     Early in the morning of February 16, 1994, Baker and his partner,
Alderick Reed, driving an unmarked police car, stopped motorist Scott
Crawford on Kingshighway in St. Louis.  Baker searched Crawford's vehicle
and discovered a loaded gun concealed beneath the driver's seat.  Baker
handcuffed Crawford, put him in the back seat of the police car, and drove
to a police station,

with Reed following in Crawford's car.  Baker told Crawford, "we can work it off, if you keep your mouth shut."

At the station, Baker placed Crawford in an interrogation room and told the still-handcuffed Crawford, "you'll be spending like $5,000 for a lawyer and . . . going through the courts . . . or you can work it out through us."  Crawford chose the latter option.  Baker asked if Crawford could "get something tonight."  Crawford replied that he could withdraw up to $300 from his account at a local bank, Normandy Bank, by using an automatic teller machine (ATM).  Crawford and Baker agreed to use for this purpose a nearby ATM operated by Mercantile Bank of St. Louis.

Crawford then drove his own car to the Mercantile ATM, with the officers following.  At 2:22 a.m., he withdrew $300.  Crawford exchanged the money for his gun and ammunition and drove home.  At his wife's urging, he reported the incident the next day.  Baker was charged and convicted of violating the Travel Act, 18 U.S.C. § 1952, which provides in relevant part:

> (a) Whoever . . . uses . . . any facility in interstate or foreign commerce, with intent to --
>
>     *   *   *   *   *
>
> (3) otherwise promote, manage, establish, carry on, or facilitate . . . any unlawful activity,
>
> and thereafter performs or attempts to perform --
>
> (A) an act described in paragraph . . . (3) shall be fined under this title, imprisoned not more than 5 years, or both . . . .
>
>     *   *   *   *   *
>
> (b) As used in this section (i) "unlawful activity" means . . . (2) extortion, bribery, or arson in violation of the laws of the State in which committed . . . .

There was evidence at trial that Mercantile Bank operates a network of ATMs. Customers of participating banks like Normandy may use these ATMs to make interstate deposits and withdrawals. Though Crawford's withdrawal triggered an entirely intrastate electronic transfer between Normandy and Mercantile, the jury found that Baker caused Crawford to use a facility in interstate commerce.

## I.

Baker first argues that the indictment failed to allege and the government failed to prove a sufficient nexus to interstate commerce to fall within the jurisdictional limits of the Travel Act. He relies on Rewis v. United States, 401 U.S. 808, 811 (1971), in which the Supreme Court held that "conducting a gambling operation frequented by out-of-state bettors, by itself," does not violate the Travel Act, and on cases holding that an incidental or fortuitous connection to interstate commerce is insufficient, such as United States v. Altobella, 442 F.2d 310, 313-15 (7th Cir. 1971). We conclude those cases are distinguishable.

We reject Baker's contention that his conduct had an insufficient effect on interstate commerce. Baker's extortion did not merely affect interstate commerce. Federal jurisdiction was established by proof that Baker carried out extortion by causing Crawford to use an interstate network of ATMs which comprise, in the words of the statute, a "facility in interstate or foreign commerce." "Congress is empowered to regulate and protect the instrumentalities of interstate commerce . . . even though the threat may come only from intrastate activities." United States v. Lopez, 115 S. Ct. 1624, 1629-30 (1995).

Moreover, use of this interstate facility was not merely incidental to Baker's unlawful activity, like the subsequent use of the mails to clear a personal check in Altobella. Here, Baker wished to extort a cash payment from Crawford before releasing him.

That could only be accomplished at 2:20 in the morning by accessing an interstate ATM facility. Thus, there was sufficient evidence for the jury to find that Baker caused Crawford to use this interstate facility to carry on Baker's unlawful activity. "[I]t is enough that the interstate travel or the use of interstate facilities makes easier or facilitates the unlawful activity." United States v. Perrin, 580 F.2d 730, 736 (5th Cir. 1978), aff'd, 444 U.S. 37 (1979). Baker's unlawful conduct falls squarely within the literal language of the Travel Act. See United States v. Pecora, 693 F.2d 421, 424 (5th Cir. 1982), cert. denied, 462 U.S. 1119 (1983); United States v. Bursten, 560 F.2d 779, 783-84 (7th Cir. 1977); United States v. Eisner, 533 F.2d 987, 992 (6th Cir.), cert. denied, 429 U.S. 919 (1976).

## II.

Baker next challenges admission of the testimony of Earl Parnell, who purchased ten to twelve firearms from Baker between late 1977 and 1987. When asked how Baker had obtained these firearms, Parnell explained:

> [Baker] said you can find these [people] that comes along, you stop them for a traffic stop or whatever, he says, and you search the car, they got a gun in the car, and he said, the dumb [expletive] are scared to go to jail . . . . He says, I tell them you got a choice to make. You can either work it out with me or you can go deal it with the courts; which one you want to do? Most of the time, they said, hey, go ahead and take the gun.

The district court instructed the jury that Parnell's testimony was to be considered only to determine Baker's state of mind or plan.

Fed. R. Evid. 404(b) allows admission of "prior bad act" evidence if it is relevant to a material issue, established by a preponderance of the evidence, more probative than prejudicial, and similar in kind and close in time. United States v. Hazelett, 32

-4-

F.3d 1313, 1319 (8th Cir. 1994). It is a rule of inclusion; we will overturn the admission of Rule 404(b) evidence only if "the appellant can show that the evidence in question clearly had no bearing upon any of the issues involved." United States v. Street, 66 F.3d 969, 976 (8th Cir. 1995) (quotation omitted).

Evidence of prior crimes or bad acts is admissible to show a common plan or scheme, see United States v. Sanchez, 963 F.2d 152, 155 (8th Cir. 1992), or intent, see United States v. Crouch, 46 F.3d 871, 875 (8th Cir.), cert. denied, 116 S. Ct. 193 (1995); United States v. Rivera-Mendina, 845 F.2d 12, 16 (1st Cir.), cert. denied, 488 U.S. 862 (1988) (prior extortion scheme admissible to show intent). Parnell testified to a remarkably similar series of prior actions by Baker: a motorist is stopped for speeding, a firearm is discovered, and the motorist is given the choice of facing charges or "working it out" with Baker. Coupled as it was with an appropriate limiting instruction, this was clearly proper Rule 404(b) evidence.

Baker also contends that the district court abused its discretion because the events were too remote in time and Parnell's testimony too prejudicial. Proximity in time is a factor in deciding whether to admit 404(b) evidence, but there is no fixed period within which the prior acts must have occurred. Lapses of time greater than in this case may be reasonable, see United States v. Shoffner, 71 F.3d 1429, 1432-33 (8th Cir. 1995), particularly if the prior acts are "so nearly identical in method as to earmark them as the handiwork of the accused," United States v. Drew, 894 F.2d 965, 970 (8th Cir.), cert. denied, 494 U.S. 1089 (1990) (quotation omitted). Here, the prior acts were virtually identical and were repeated over the course of a decade. There was no abuse of discretion in concluding that this highly probative testimony was neither too remote nor too prejudicial to be admissible under Rule 404(b).

Baker further argues that the district court made two errors in applying the Sentencing Guidelines, resulting in an improper base offense level and an unwarranted enhancement for abuse of a position of public trust. We review the district court's fact finding for clear error, and its application of the guidelines <u>de novo</u>, "giving due deference to the district court's application of the guidelines." <u>United States v. Evans</u>, 30 F.3d 1015, 1020 (8th Cir. 1994), <u>cert. denied</u>, 115 S. Ct. 1383 (1995).

**A. Base Offense Level.** Baker argues that his base offense level should be six under § 2E1.2, the section referenced for violations of 18 U.S.C. § 1952. <u>See</u> USSG App. A. However, § 2E1.2(a)(2) says to use the base offense level for the underlying crime, if greater than six. Here, the underlying crime was the state law offense of extortion by a police officer, so the guideline for the most analogous federal offense must be found. <u>See</u> § 2E1.2, comment. (n.2); <u>United States v. Langley</u>, 919 F.2d 926, 929-31 (5th Cir. 1990). The district court chose § 2C1.1, which governs bribery and extortion "Under Color of Official Right." We agree. <u>See</u> <u>United States v. Mariano</u>, 983 F.2d 1150, 1158 (1st Cir. 1993).

Section 2C1.1 prescribes a minimum base offense level of ten but also cross references other sections. The district court applied the cross-reference to § 2J1.2, obstruction of justice, on the ground that Baker's extortion offense "was committed for the purpose of . . . obstructing justice in respect to, another criminal offense," § 2C1.1(c)(2). The other criminal offense was, of course, Crawford's firearm violation. The obstruction of justice cross reference, plus a three-level increase for "substantial interference with the administration of justice" under § 2J1.2(b)(2), increased Baker's base offense level to fifteen.

See § 2J1.2, comment. (n.1) (substantial interference includes "improper termination of a felony investigation").

Baker argues that the court should instead have cross-referenced to § 2X3.1, the accessory after the fact guideline, which calls for a base offense level six levels lower than that of Crawford's firearm offense. We disagree. Section 2C1.1(c)(2) says to cross reference to obstruction or accessory "as appropriate." Conduct such as Baker's might fit the statutory definition of either accessory after the fact or obstruction of justice. See 18 U.S.C. §§ 3, 1510. Section 2J1.2(c)(1) contains its own cross reference to § 2X3.1, but says to apply that cross reference only "if the resulting offense level [under § 2X3.1] is greater than" the level determined under § 2J1.2(a) and (b). In United States v. Pompey, 17 F.3d 351 (7th Cir. 1994), the court upheld a cross reference from § 2C1.1 to § 2X3.1, rather than § 2J1.2, because that produced the highest base offense level. Here, a cross reference to § 2X3.1 would have complicated the analysis -- by requiring calculation of the base offense level of whatever firearms offenses Crawford may have committed under state or federal law -- and apparently would not have yielded a greater base offense level than § 2J1.2. In these circumstances, we conclude that the district court correctly applied these interrelated guideline provisions. See Mariano, 983 F.2d at 1158.

**B. Abuse of Public Trust.** Baker next challenges the two-level increase he received for abuse of public trust under USSG § 3B1.3. Because police officers clearly occupy positions of public trust, the inquiry in most cases is whether defendant used a police officer's special knowledge or access to facilitate or conceal the offense. See United States v. Williamson, 53 F.3d 1500, 1525 (10th Cir.), cert. denied, 116 S. Ct. 218 (1995). We agree with the district court that, from this perspective, Baker's conduct was a most egregious abuse of a position of public trust.

However, § 3B1.3 provides that the abuse of trust enhancement should not be applied "if an abuse of trust or skill is included in the base offense level or specific offense characteristic," in other words, if "an abuse of trust is so central to [defendant's] crime that the abuse would be included" in calculating that crime's base offense level. United States v. Claymore, 978 F.2d 421, 423 (8th Cir. 1992). Abuse of trust is an element of extortion under color of public office. See United States v. Butt, 955 F.2d 77, 88-90 (1st Cir. 1992). Thus, Baker argued to the district court, imposing this enhancement was impermissible "double counting." He renews that argument on appeal. Unfortunately, neither the court's comments at sentencing, nor the government's brief to this court, address why the enhancement is nonetheless proper.

The interplay between § 2C1.1 extortion offenses and the § 3B1.3 enhancement is addressed by Application Note 3 to § 2C1.1:

> 3. Do not apply § 3B1.3 except where the offense level is determined [by a cross reference mandated by] § 2C1.1(c)(1), (2), or (3). In such cases, an adjustment from § 3B1.3 may apply.

USSG § 2C1.1, comment. (n.3). Here, Baker's base offense level was determined by just such a cross reference to the obstruction of justice guideline, § 2J1.2. In United States v. Ford, 21 F.3d 759, 766-67 (7th Cir. 1994), in which defendant received an abuse of trust enhancement because his base offense level was determined under the RICO guideline, not § 2C1.1, the court explained:

> Application Note 3 makes clear that the abuse of trust exemption does not carry over in cross-referencing situations. Once a different guideline comes into play, the abuse of trust enhancement should be applied even though the new offense is based on the underlying offense of public bribery, presumably because the abuse of trust is not already reflected in the base offense levels for those other [cross referenced] offenses.

Application Note 3 and <u>Ford</u> establish that Baker's double counting argument does not prevail simply because the starting point for determining his base offense level was § 2C1.1. However, there is a further complexity. After cross referencing from § 2C1.1 to § 2J1.2, the district court further increased Baker's base offense level by three levels because of a "Specific Offense Characteristic," Baker's substantial interference with the administration of justice. <u>See</u> § 2J1.2(b)(2). Recall that § 3B1.3 says not to employ the abuse of trust enhancement "if an abuse of trust or skill is included in the base offense level <u>or specific offense characteristic</u>." The issue in this case thus comes down to whether there is double counting, within the meaning of § 3B1.3 and Application Note 3 to § 2C1.1, if the § 3B1.3 enhancement is added to *this specific application of § 2J1.2.* We have found no relevant Guidelines precedent. Because the issue is, at least in part, fact intensive, we conclude that it should be addressed in the first instance by the district court.

Accordingly, we remand for reconsideration of the USSG § 3B1.3 sentencing issue. In all other respects, the judgment of the district court is affirmed.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent from Part I of the majority opinion. Although I believe an ATM can be and ordinarily is an instrument used in interstate commerce, I find, under the circumstances of the present case, the use was neither caused by appellant nor has a sufficient nexus to the offense to fall within the jurisdictional limits of the Travel Act. Here, the use of the ATM was suggested by Crawford and the use was entirely incidental and fortuitous. Hence, I would reverse the conviction because the use of the ATM was in no way a part of the plan or scheme to carry out an extortion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.