# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2202

_____

United States of America,                 *
                                          *
          Appellee,                       *
                                          *   Appeal from the United States
     v.                                   *   District Court for the
                                          *   District of South Dakota.
Clyde White,                              *
                                          *
          Appellant.                      *

_____

Submitted: December 11, 2008
Filed: March 4, 2009

_____

Before WOLLMAN, BYE, and RILEY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

A jury found Clyde White guilty of one count of being a drug user in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). The district court[1] imposed a sentence of fourteen months' imprisonment. White appeals his conviction. We affirm.

---

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

I.

In July 2006, White set off from Florida on a solo motorcycle trip across the United States. In August, he arrived in Sturgis, South Dakota, for the annual motorcycle rally. While attending the rally, White stayed at a campground with members of the Outlaw motorcycle club, of which he was a member. On Friday, August 11, White was involved in a motorcycle accident. He suffered a broken ankle and two cracked ribs, and his motorcycle was rendered inoperable. White was taken to a hospital, but decided to return to Florida rather than to undergo immediate surgery.

White made arrangements to ride at least part of the way to Florida with other Outlaw members whom he met at the campground. Because the cab of the members' pickup truck was already full, White agreed to ride in the truck's bed. As the group took a detour through Badlands National Park on their return trip, they were pulled over by a park ranger for a defective tail light. Investigating officers found several weapons in the truck's cab and a 9mm Beretta in the bed. White and the other occupants were transported to the Pennington County Jail, where they were processed and booked. An inventory of White's personal items revealed that he possessed a tin containing powdery residue that later tested as cocaine. White was required to provide a urine sample, which tested positive for 18.1 nanograms per milliliter of THC (marijuana) and .431 micrograms per milliliter of benzoylecgonine (cocaine).

At trial, Chief Ranger Mark Gorman testified that he had advised White of his rights before interviewing him at the county jail. According to Gorman, White said that "the Egyptian 9 millimeter" found in the bed of the truck was his and that he wanted it back. Gorman further testified that when asked why he had the gun, White referred to a violent confrontation between Outlaw members and a rival motorcycle gang, suggesting that the gun was for protection. During the presentation of his case, White denied making these statements.

-2-

While cross-examining one of the investigating officers earlier during the trial, White's counsel attempted to offer into evidence a document entitled "Arrest Report and Custody Authorization" (Report).

In response to the district court's query regarding the document's relevance, counsel stated that he intended to use it during Ranger Gorman's testimony. After stating, "Why don't you wait for Mr. Gorman to testify," the district court declined to admit the Report, questioning its relevance.

During his cross-examination of Ranger Gorman, defense counsel asked Gorman to identify the Report, and then again offered it as an exhibit. The district court sustained the government's relevance-based objection, precluded defense counsel from further questions regarding the Report, and granted counsel permission to file a written offer at a later time.

The following morning, defense counsel submitted a written offer, which stated, among other things:

> Of particular importance is block 100 of the form, entitled "Arrestee's Rights Given By:" and filled out as "Not Given." Witness Gorman testified at length that a statement was taken regarding Defendant White's possession of a weapon, his manipulation of it and related circumstances. The credibility of this witness, who also testified that Defendant White's Miranda rights were provided to him from a card, is a central issue in this case. The statement at issue was not video taped, signed by Defendant or otherwise verified and Exhibit 113 should be received concerning the credibility issue.

After considering the offer, the district court denied it, again rejecting the proffered Report as irrelevant.

## II.

On appeal, White argues that the district court erred in denying the admission of the Report and in precluding further cross-examination of Ranger Gorman regarding the "Not Given" notation thereon. White asserts that these denials violated his Fifth and Sixth Amendment rights. Additionally, he argues that these evidentiary rulings, as well as others, coupled with comments made by the district court, reflected trial court bias sufficient to deprive him of his right to a fair trial.

### A.

We review challenges to a district court's evidentiary rulings for abuse of discretion, but where constitutional rights are implicated, "we consider the matter de novo." United States v. Ragland, No. 07-2428, slip op. at 7 (8th Cir. Feb. 11, 2009) (citing United States v. Kenyon, 481 F.3d 1054, 1063 (8th Cir. 2007)). We will reverse, however, only if the error is more than harmless. Chapman v. California, 386 U.S. 18, 22 (1967). Thus, "[e]ven when an evidentiary ruling is improper, we will reverse a conviction on this basis only when the ruling affected substantial rights or had more than a slight influence on the verdict." United States v. Gustafson, 528 F.3d 587, 591 (8th Cir. 2008) (citing United States v. Ballew, 40 F.3d 936, 941 (8th Cir. 1994)).

"Criminal defendants have a fundamental right to present the testimony of witnesses in their defense, a right grounded in the fifth and sixth amendments." United States v. Turning Bear, 357 F.3d 730, 733 (8th Cir. 2004). The right to cross-examination, however, is not without limitation. Ragland, No. 07-2428, slip op. at 7 (citing United States v. Depreau, 414 F.3d 869, 875 (8th Cir. 2005)) (internal quotations omitted). The admission of the Report and further cross-examination thereon would not likely have had sufficient influence on White's conviction to warrant a reversal. White did not challenge the admission of his alleged confession

-4-

during the pretrial suppression hearing, and thus nothing in the Report would have changed the substance of Ranger Gorman's testimony. The record does not indicate that Ranger Gorman wrote "Not Given." Rather, the testimony shows that multiple persons were involved in the booking process. Thus, although we question the basis of the district court's ruling rejecting the proffered exhibit, we are satisfied that any error in ruling it inadmissible was at worst harmless.

B.

White argues that the district court made prejudicial comments throughout the trial and restricted the presentation of his defense to such a degree as to deprive him of a fair trial.

The trial judge is "more than a mere moderator; he is the governor of the trial for the purpose of assuring its proper conduct." Dranow v. United States, 307 F.2d 545, 572 (8th Cir. 1962) (internal quotations omitted). We are, therefore, "reluctant to disturb a judgment of conviction by reason of a few isolated, allegedly prejudicial comments of a trial judge . . . ." United States v. Warfield, 97 F.3d 1014, 1027 (8th Cir. 1996) (quoting United States v. Evans, 30 F.3d 1015, 1018 (8th Cir. 1994)) (internal quotations omitted). "Reversal is warranted where the court's comments throughout the trial are one-sided and interfere with a defendant's case to such an extent that the defendant is deprived of the right to a fair trial." Id.

Most of the comments referred to by White as evidence of bias were made either during the course of sustaining the government's objections or in the way of admonitions that counsel keep his questions relevant and proceed with his case. While perhaps some of the comments might have been better left unsaid, overall they reflected nothing more than the district court's desire to keep the proceedings moving in an orderly, efficient manner.

The only comment that we deem worthy of mention occurred in response to a government objection during closing arguments. White's counsel argued that White's THC level "was so low that it was almost a negative test," asserting that fifteen nanograms per mililiter is the generally accepted threshold. The state's forensic chemist had testified that ten nanograms per milliliter is the threshold the state uses to indicate a positive presence of marijuana. Under either test, however, White's results were positive at 18.1 nanograms per milliliter. The district court sustained the government's objection to White's mischaracterization of the testimony regarding the test, saying that the amount did not matter because "[t]he important point is whether or not there was marijuana or cocaine in the urine test." White argues that in making these comments, the judge took the issue of whether White was an "unlawful drug user" out of the jury's hands.

Jury instruction number seven stated:

> The phrase "unlawful user of a controlled substance" means a person who uses a controlled substance in a manner other than as prescribed by a licensed physician. The defendant must have been actively engaged in the use of a controlled substance during the time he possessed the firearm, but the law does not require that he used the controlled substance at the precise time he possessed the firearm. Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct.

At the outset of the trial, the district court instructed the jury that "[y]ou should not take anything I may say or do during the trial as indicating what I think of the evidence or what I think the verdict should be." Again, after the parties had rested and just prior to closing arguments, the district court reminded the jury that "nothing I have said or done is intended to suggest what your verdict should be. That is entirely up to you."

"We afford district courts wide latitude in controlling closing arguments." Warfield, 97 F.3d at 1021. The district court's comments in sustaining the government's objection did not undermine the law set forth in instruction seven. Nor did they have any impact on the fact that White's positive test for cocaine was nearly three times greater than the threshold amount of .15 micrograms per milliliter.

## III.

Having studied the record with care, we conclude that it reflects no bias on the district court's part and that the district court's evidentiary rulings did not result in prejudicial error to White.

The judgment is affirmed.

_____