# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2550
_____

United States of America

*Plaintiff - Appellee*

v.

Kendra Kingsbury

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri
_____

Submitted: April 8, 2024
Filed: July 15, 2024
_____

Before SMITH, WOLLMAN, and GRASZ, Circuit Judges.
_____

GRASZ, Circuit Judge.

Kendra Kingsbury was a Federal Bureau of Investigations (FBI) Intelligence Analyst who had access to classified national defense information. She pled guilty to two counts of willful retention of national defense information in violation of

18 U.S.C. § 793(e). At sentencing, the district court[1] applied a two-level enhancement under the United States Sentencing Guidelines Manual (U.S.S.G. or Guidelines) § 3B1.3 for abusing a position of public trust in a manner that significantly facilitated the commission or concealment of the offense. After applying the enhancement, Kingsbury's advisory Guidelines range was 46 to 57 months of imprisonment, and the district court sentenced Kingsbury to 46 months. Kingsbury appeals the application of the enhancement to her sentence.

## I. Background

In 2004, Kingsbury began working for the FBI as an Intelligence Analyst. In that role, the FBI granted her Top Secret/Sensitive Compartmented Information (SCI) security clearance,[2] which provided her with access to classified information and sensitive government materials concerning national defense. During her employment, the FBI gave Kingsbury annual training on how to properly handle classified information. She signed various employment agreements acknowledging both the importance of properly handling the classified information and the repercussions for mishandling it.

In 2017, Kingsbury told an FBI security officer that she had classified documents within her home. The security officer went with Kingsbury to her home to recover the classified documents. On entering her home, Kingsbury gave a yellow envelope to the security officer containing confidential documents. While there, the security officer noticed other FBI documents in Kingsbury's bathroom. The security

---

[1]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

[2]"Top Secret" classification is given to information that "reasonably could be expected to cause exceptionally grave damage to the national security" in the event of unauthorized disclosure. Exec. Order No. 13526, 75 Fed. Reg. 707 (2009). SCI designates that some information requires additional security clearance or permissions. 28 C.F.R. § 17.18 (2007).

officer and Kingsbury then sorted through those documents and identified additional classified materials.

The FBI conducted two more searches of Kingsbury's home, and it also searched her workspace at the Kansas City field office. In total, the FBI located some 20,000 documents originating from the FBI or other government agencies, of which 386 were classified. Several of these documents related to the FBI's counterterrorist investigations. After examining Kingsbury's home and cellular phone records, the FBI discovered several calls were made to and received by suspects in those counterterrorism investigations, including a suspected associate of Osama Bin Laden. Kingsbury denied making these phone calls.

Based on Kingsbury's unlawful retention of the documents, she pled guilty to two counts of willful retention of national defense information in violation of 18 U.S.C. § 793(e). At sentencing, the district court applied a two-level enhancement under U.S.S.G. § 3B1.3 for Kingsbury abusing a position of public trust, resulting in a total offense level of 23. The application of this enhancement increased Kingsbury's Guidelines range from 37–46 months of imprisonment to 46–57 months of imprisonment. The district court ultimately sentenced Kingsbury to 46 months of imprisonment, the very bottom of the Guidelines range and well below the statutory maximum sentence of ten years of imprisonment. *See* 18 U.S.C. § 793. Kingsbury appeals her sentence.

## II. Analysis

Kingsbury appeals the district court's application of the § 3B1.3 enhancement, arguing the enhancement is already subsumed within the base offense level. Because Kingsbury did not object to the enhancement at sentencing, we review the district court's ruling for plain error. *See United States v. Williams*, 30 F.4th 796, 799 (8th Cir. 2022). Under that standard, we will reverse only when a defendant shows "(1) error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings."

*Id.* (cleaned up) (quoting *United States v. Harrell*, 982 F.3d 1137, 1140 (8th Cir. 2020)). "Satisfying all four prongs of the plain error test 'is difficult'[,]" *Greer v. United States*, 593 U.S. 503, 508 (2021) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)), as we will only reverse if the other three prongs are met and the error "seriously affects the fairness, integrity or public reputation of judicial proceedings[,]" *Puckett*, 556 U.S. at 135 (cleaned up) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)).

The § 3B1.3 enhancement applies "[i]f the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense . . . ." When the sentencing court determines that a person occupies a position of public trust—which Kingsbury conceded she does—it must then determine whether the position of trust "contributed in some significant way to facilitating the commission or concealment of the offense . . . ." *United States v. Waldner*, 580 F.3d 699, 706 (8th Cir. 2009) (ellipses in original) (quoting U.S.S.G. § 3B1.3, cmt. n.1). But § 3B1.3 also contains a "carve out" provision, which precludes the enhancement "if an abuse of trust or skill is included in the base offense level or specific offense characteristic." *Id.* (quoting § 3B1.3). Kingsbury argues the carve out provision applies to her because she would not have been able to obtain the FBI documents without her position of trust as an Intelligence Analyst within the FBI. According to her, because her position of trust was "inextricably interwoven and central" to the commission of her crime, her "abuse of trust" is already included in her base offense level. We disagree.

In support of her argument, Kingsbury claims that precedent requires us to examine her specific conduct in committing her crime to determine whether she could have committed her crime but-for her abuse of a position of public trust. If not, then the enhancement cannot apply. But this is a strained reading of our precedent. We have never suggested that courts should look to a defendant's specific means of committing a crime, only applying the enhancement's carve out provision if she abused a position of public trust in committing her crime. We do not find Kingsbury's argument persuasive.

In *United States v. Baker*, we said the enhancement does not apply "if 'an abuse of trust is *so central* to a defendant's crime that the abuse would be included' in calculating that crime's *base offense level*." 82 F.3d 273, 277 (8th Cir. 1996) (emphasis added) (cleaned up) (quoting *United States v. Claymore*, 977 F.2d 421, 423 (8th Cir. 1992)). Kingbury claims this court looks to whether the abuse of trust was "central" to a defendant's crime. But Kingsbury omits the second half of the quoted rule; we must ask whether the abuse of trust "'would be included' in calculating that crime's base offense level." *Id.* (quoting *Claymore*, 978 F.2d at 423). She then claims *Baker* demands a "fact intensive inquiry" into a defendant's specific conduct before applying the enhancement. This, too, is pulled out of context. The "fact intensive inquiry" language refers to *Baker*'s specific issue of whether the district court erred in double counting the defendant's conduct by adding both an abuse-of-trust enhancement and a substantial-interference-with-the-administration-of-justice enhancement. *See id.* at 278. Kingsbury does not allege there is a double-counting issue in her case, so we look only to whether the enhancement is "duplicative" of Kingsbury's "base offense level or specific offense characteristic." *Waldner*, 580 F.3d at 707.

Indeed, we rejected a similar argument in *United States v. O'Hagan*, 139 F.3d 641, 656 (8th Cir. 1998). In that case, O'Hagan, a senior partner at his law firm, was privy to a client's financial dealings and used this insider information to make money trading stocks. *Id.* at 645–46. He was subsequently convicted of securities fraud, money laundering, and mail fraud. *Id.* at 646. He argued he should not have received an abuse-of-trust enhancement "because an abuse of trust is already included in the offense of securities fraud itself under the misappropriation theory." *Id.* at 656. We upheld application of the enhancement, agreeing with the district court that "a secretary or other employee at [the firm] could have breached a duty to the firm and violated the securities laws under the misappropriation theory *without* abusing a position of special trust." *Id.* (emphasis added). Because O'Hagan was a senior partner at the firm, "[he] occupied the position of special trust the application note envisions." *Id.* Therefore, we affirmed the application of the enhancement, even though his position of trust was endemic to his role as a senior partner. *Id.*

Likewise, Kingsbury had Top Secret/SCI security clearance because of her position in the FBI. Though her security clearance allowed her access to classified documents, another FBI employee—one without the same clearance—could also have unlawfully obtained the same classified documents. In that scenario, the employee could be convicted of the same crime as Kingsbury, receive the same base offense level as Kingsbury, but potentially avoid any enhancement because that employee lacked security clearance. In contrast, Kingsbury conceded she occupied a position of public trust not included in her base offense level. Thus, she fails to show error, let alone plain error.

### III. Conclusion

We affirm the district court.

_____